**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DANIEL W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV402 |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Daniel W., brought this pro se action pursuant to
the Social Security Act (the "Act") to obtain judicial review of a
final decision of Defendant, the Commissioner of Social Security
(the "Commissioner"), denying Plaintiff's claim for Disability
Insurance Benefits ("DIB") and Supplemental Security Income
("SSI"). (Docket Entry 2.) The Commissioner has filed the
certified administrative record (Docket Entry 7 (cited herein as
"Tr. __")), and both parties have submitted dispositive briefs in
accordance with Rule 5 of the Supplemental Rules for Social
Security Actions under 42 U.S.C. § 405(g) (Docket Entry 10
(Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief)). For

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner
of the Social Security Administration on May 6, 2025, and he took the oath of
office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the
defendant in this suit. No further action need be taken to continue this suit
by reason of the last sentence of Section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 258-64, 270-71), alleging a disability onset date of March 11, 2020 (see Tr. 258, 270).[3] Upon denial of those applications initially (Tr. 95, 103-14, 117-26) and on reconsideration (Tr. 96-102, 115, 127-42), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ").[4] Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-94.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 11-12), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

_____

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 14 at 1.)

[3] The record contains three different applications for DIB by Plaintiff dated June 22, 2020 (Tr. 253-57), October 1, 2020 (Tr. 268-69), and November 12, 2020 (Tr. 270-71), all of which allege a disability onset date of March 11, 2020 (see Tr. 254, 268, 270). Although the record does not clarify the reason for Plaintiff's multiple DIB applications, both the state agency and the ALJ adjudicated Plaintiff's November 2020 application (see Tr. 13-34, 95-115).

[4] The record lacks a copy of Plaintiff's request for hearing, but does contain a letter dated November 9, 2021, from the SSA to Plaintiff acknowledging receipt of that hearing request (Tr. 159-70).

2

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since March 11, 2020, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: residuals from a fracture of the right tibial plateau; degenerative joint disease; and degenerative disc disease.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform a range of light work . . . in that he is limited to lifting, carrying, pushing, and pulling 20 pounds occasionally and ten pounds frequently, he is able to sit for six hours in an eight-hour workday, and stand or walk six hours in an eight-hour workday. He is limited to occasional pushing and pulling with the right lower extremity. He can never climb ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, can frequently "balance," as that term is defined in the [Dictionary of Occupational Titles ("DOT")] and [Selected Characteristics of Occupations ("SCO")], can occasionally stoop, and can never kneel, crouch, or crawl.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

> 11. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, from March 11, 2020, through
> the date of th[e ALJ's] decision.

(Tr. 19-30 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[5] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174

---

[5] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

6

F.3d 473, 475 n.2 (4th Cir. 1999).[6]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[7] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the

---

[6] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[7] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[8]

## B. Assignments of Error

After affording Plaintiff's Complaint (Docket Entry 2), dispositive brief (Docket Entry 10), and supporting documents (id. at 4-5) the liberal construction due such pro se filings, see Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), the Court will construe Plaintiff's assignments of error as the following:

1) the ALJ erred by finding that Plaintiff retained the RFC to sit, stand, and/or walk for up to six hours in an eight-hour workday (see Docket Entry 10 at 1); and

---

[8] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) new and material evidence from Dr. Riyaz Hassanali Jinnah warrants remand under sentence four and/or sentence six of 42 U.S.C. § 405(g), because that evidence raises a reasonable probability of a different outcome in Plaintiff's DIB and SSI claims (see id. at 2).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 11 at 7-13.)

## 1. Sitting, Standing, and Walking Limitations

In Plaintiff's first issue on review, he makes the following supportive assertions:

> [I] was in a[n] accident in March of 11, 2020, [and] since my accident [I] could not walk for a year. When [I] started walking it hurted [sic] real bad to walk, and now to this day, and every day it hurt [sic] real bad to walk[. I] am in need for knee replac[e]ment. I can't stand up without my knee going out for 5 min[ute]s. I fall sometimes by trying to stand up for more then [sic] [I] can. My leg feells [sic] like sometimes my feeling be [sic] gone. . . . It hurts to sit down for 30 min[ute]s or more. The only time pressure is release[d] some is when [I] lay [sic] down.

(Docket Entry 10 at 1.) The undersigned will liberally construe those assertions as an argument that the ALJ erred by finding that Plaintiff retained the RFC to sit, stand, and/or walk for up to six hours in an eight-hour workday. For the reasons that follow, however, those arguments fall short.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's

9

exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p"). Although the ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary

10

"accurate and logical bridge," id. (internal quotation marks omitted), between her discussion of the evidence and the sitting, standing, and walking limitations in the RFC assessment.

To begin, the ALJ in this case expressly acknowledged Plaintiff's testimony and other subjective statements that "[h]e cannot stand on his leg for 30 minutes without falling" (Tr. 22 (referencing Tr. 342)), he "cannot stand long enough to fix a full meal" (id. (referencing Tr. 344)), he "uses a riding cart when shopping" (id. (referencing Tr. 345)), "[h]e can only walk a little before he has pain or his leg locks up" (id. (referencing Tr. 342)), "[h]e can walk ten steps then he has to rest for about 15 to 20 minutes" (id. (referencing Tr. 77, 347)), and "he cannot even stand for ten minutes, and sitting for ten minutes causes pain" (id. (referencing Tr. 66)), but found his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [] not fully supported by or consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.). The ALJ further supported that finding with the following analysis:

> Although [Plaintiff] has alleged even greater limitations [than reflected in the RFC], his statements about the intensity, persistence, and limiting effects of his symptoms are not fully consistent with the overall record. . . . [Plaintiff] did sustain a fracture of the right tibial plateau, he underwent surgery and physical therapy, he developed right knee arthritis, and he has been advised that at some point he will require a total knee replacement. . . . These impairments do cause limitations, as addressed in the [ RFC]. Examinations

11

show [Plaintiff] had an antalgic gait,
tenderness, . . . [and] from four to five out of five
strength in the right lower extremity . . . .
However, . . . [he] ambulated independently. Further,
[Plaintiff] reported that he is able to live on his own,
he rides his scooter, he is able to clean, do laundry,
wash dishes, take out the trash, and shop in stores.
Therefore, his statements about the intensity,
persistence, and limiting effects of his symptoms are not
fully consistent with the overall record. Further
limitations beyond those set forth in [the RFC] are not
consistent with [Plaintiff]'s treatment history,
including findings on examination, evidence of
improvement over the course of the period at issue, [his]
subjective reports, and treatment sought, recommended,
and provided, and they are also not consistent with the
evidence of his overall level of activity.

(Tr. 25-26 (internal parenthetical citations omitted).) That
analysis cites to substantial evidence to support the ALJ's
decision to discount Plaintiff's subjective symptom reports.

Beyond the ALJ's analysis of Plaintiff's subjective symptoms
reports, the ALJ's evaluation of the opinion evidence provides
further support for the sitting, standing, and walking limitations
in the RFC. In particular, the ALJ found "partially persuasive"
(Tr. 26) the opinions of the state agency medical consultants that
Plaintiff remained capable of light work involving up to six hours
each of sitting, standing, and walking (Tr. 98, 105, 111). In that
regard, the ALJ fully credited the consultants' opinions regarding
Plaintiff's abilities to sit, stand, and walk, but found that "the
record show[ed Plaintiff wa]s somewhat further limited to
occasional pushing and pulling with the right lower extremity,
occasional climbing [of] ramps and stairs, no climbing [of]

12

ladders, ropes, or scaffolds, occasional stooping, and no kneeling, crouching, or crawling." (Tr. 26.) The ALJ also deemed the opinions of Plaintiff's orthopedist Dr. Holly Pilson, provided in a Medical Source Statement ("MSS") (Tr. 365-67) dated October 15, 2021 (see Tr. 367), "partially persuasive" (Tr. 27 (emphasis added)), finding her opinion that Plaintiff could sit for eight hours total and at a time, stand for three hours total and two hours at a time, and walk for three hours total and two hours at a time (see Tr. 366) "reasonably consistent with the overall record" (Tr. 27 (emphasis added)), but ultimately found that the record supported a finding that Plaintiff could "sit for six hours and stand or walk for six hours with ordinary breaks" (id.). The ALJ expressly noted that "Dr. Pilson's opinion that [Plaintiff] need[ed] the ability to shift between sitting, standing, and walking at will [wa]s unpersuasive," because it conflicted with "her opinion that [Plaintiff] could sit for eight hours at a time, could stand for two hours at a time, and could walk for two hours at a time." (Id.) The ALJ's analysis of that opinion evidence provides further substantial evidence to support the sitting, standing, and walking limitations in the RFC.

In short, Plaintiff's first issue on review does not warrant remand.

13

## 2. New Evidence

Plaintiff's second and final assignment of error contends that "[he] ha[s] written statements from the Doctor that [he is] disable[d]." (Docket Entry 10 at 2.) In that regard, Plaintiff attached to his brief two treatment notes from Dr. Jinnah dated December 20, 2023 ("2023 New Evidence") (id. at 4), and May 14, 2024 ("2024 New Evidence") (collectively "New Evidence") (id. at 5). The undersigned will liberally construe that pro se allegation as an argument that the New Evidence warrants remand under sentence four and/or sentence six of 42 U.S.C. § 405(g), because that evidence raises a reasonable probability of a different outcome in Plaintiff's DIB and SSI claims.

As a threshold matter, the Court must determine whether to analyze Plaintiff's New Evidence under sentence four or six of Section 405(g). Plaintiff submitted the 2023 New Evidence to the Appeals Council, but not the 2024 New Evidence. (See Tr. 2.) As Plaintiff did not submit the 2024 New Evidence to the Commissioner and presented it for the first time to this Court, the Court must analyze the 2024 New Evidence under sentence six of Section 405(g). See Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993) ("Sentence-six remands may be ordered . . . where new, material evidence is adduced that was for good cause not presented before the agency." (citations omitted)).

14

With regard to the 2023 New Evidence, if the Appeals Council considered and incorporated that evidence into the record, the Court can consider it as part of a substantial evidence review under sentence <u>four</u> of 42 U.S.C. § 405(g). See <u>Meyer v. Astrue</u>, 662 F.3d 700, 704 (4th Cir. 2011) (noting that court would apply sentence <u>four</u> standard and "review the record as a whole including any new evidence that the Appeals Council specifically <u>incorporated</u> . . . into the administrative record" (emphasis added) (internal quotation marks omitted)); <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991) ("The Appeals Council specifically <u>incorporated</u> [the treating psychiatrist]'s letter . . . into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner]'s findings." (emphasis added)). In contrast, if the Appeals Council declined to consider and to incorporate the 2023 New Evidence into the record, the Court may only remand the case under sentence <u>six</u> of Section 405(g), if Plaintiff can demonstrate that the 2023 New Evidence qualifies as new and material and that good cause exists for the failure to present that evidence to the ALJ. See 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . ., but only upon a showing that there is new evidence which is material and that there is good cause for the

15

failure to incorporate such evidence into the record in a prior proceeding . . . ."); see also Farrell v. Astrue, 692 F.3d 767, 770 (7th Cir. 2012) ("Evidence that has been rejected by the Appeals Council cannot be considered [under sentence four] to reevaluate the ALJ's factual findings.").

Here, the Appeals Council, in denying Plaintiff's request for review, noted that "[Plaintiff] submitted [the 2023 New Evidence]," but found that "[it] d[id] not relate to the period at issue [before the ALJ]" and thus "d[id] not affect the decision about whether [Plaintiff] w[as] disabled beginning on or before February 3, 2023." (Tr. 2.) Consistent with that finding, the Appeals Council listed as "additional evidence which it [wa]s making part of the record" only "[the r]equest for review, received April 11, 2023, from [Plaintiff]." (Tr. 6; see also Tr. 11-12 (request for review).) Those actions by the Appeals Council harmonize with the applicable regulations, which provide that the Appeals Council "will evaluate all additional evidence it receives, but will only mark as an exhibit and make a part of the official record additional evidence it determines meets the requirements of [20 C.F.R.] §[§] 404.970(a)(5) and (b)[ and 416.1476(a)(5) and (b)]." 20 C.F.R. §§ 404.976(a), 416.1476(a) (emphasis added); see also Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-3-5-20.A ("Evaluation of Additional Evidence") (Dec. 16, 2020)

16

(emphasis added).[9]  Those regulations also provide that the Appeals

Council "will include in th[e certified administrative] record [in

federal district court] all additional evidence the Appeals Council

received  during  the  administrative  review  process,  including

additional evidence that the Appeals Council received but did not

exhibit  or  make  part  of  the  official  record."  20  C.F.R.

§§  404.976(a),  416.1476(a)  (emphasis  added);  see also  HALLEX,

§  I-3-5-20.C.3.     However,  despite  the  Appeals  Council's

acknowledged  receipt  of  the  new  evidence  (see  Tr. 2)  and

Plaintiff's  instant  action  for  judicial  review  (Docket Entry 2),

the  new  evidence  does  not  appear  in  the  administrative  transcript

before  this  Court.

That  chain  of  events  could  lead  the  Court  to  find  that  the

Appeals  Council  considered  the  new  evidence  by  determining  that  it

"d[id]  not  relate  to  the  period  at  issue"  (Tr. 2),  and  should  have,

---

[9] The applicable regulations provide, in pertinent part, as follows:

(a) The Appeals Council will review a case if—

. . .

> (5) Subject to paragraph (b) of this section, the
> Appeals Council receives additional evidence that is
> new, and material, and relates to the period on or before
> the date of the hearing decision, and there is a
> reasonable probability that the additional evidence
> would change the outcome of the decision.

(b) The Appeals Council will only consider additional evidence under
paragraph (a)(5) of this section if [the claimant] show[s] good
cause for not informing [the ALJ] about or submitting the evidence
as described in § 404.935 [which requires claimants to inform the
ALJ about or to submit evidence at least five business days prior to
the ALJ hearing].

20 C.F.R. §§ 404.970, 416.1470 (emphasis added).

17

under 20 C.F.R. §§ 404.976(a) and 416.1476(a), <u>incorporated</u> the new evidence into the record by including it in the administrative transcript before the Court, such that sentence <u>four</u> of 42 U.S.C. § 405(g) should guide the Court's analysis.[10]  However, as discussed in more detail below, the circumstances presented here convince the Court to evaluate Plaintiff's 2023 New Evidence, along with Plaintiff's 2024 New Evidence, under sentence <u>six</u> of Section 405(g).

Significantly, the Appeals Council found that the 2023 New Evidence "<u>d[id] not relate</u> to the period" before the ALJ and "<u>did not affect</u> the decision" whether Plaintiff met the disability requirements prior to the ALJ's decision.  (Tr. 2 (emphasis added).)  Those findings signal that the Appeals Council did not believe the 2023 New Evidence should comprise part of the record before the ALJ.  Indeed, Sections 404.970 and 416.1470 contain a <u>separate subparagraph</u> explaining the special circumstances surrounding an Appeals Council finding that new evidence did not relate to the period before the ALJ:

---

[10] Indeed, some district courts hold that merely submitting evidence to the Appeals Council, regardless of whether the Appeals Council "considers" or "exhibits" that evidence, makes that evidence part of the official record and outside the purview of a sentence <u>six</u> remand.  <u>See</u> <u>Burgos v. Kijakazi</u>, No. 8:20CV2497, 2022 WL 843594, at *4 (M.D. Fla. Mar. 22, 2022) (unpublished) ("As [the p]laintiff submitted the [new evidence] <u>during the administrative proceedings</u>, and the Appeals Council explicitly <u>addressed</u> those records and found that they did not . . . relate[] to the period at issue, no basis for remand under sentence <u>six</u> exists as to the [new evidence]." (emphasis added)); <u>Barbara H. v. Saul</u>, No. 19 CV 50011, 2020 WL 3469163, at *5 (N.D. Ill. June 25, 2020) (unpublished) (holding that merely "present[ing]" new evidence to Appeals Council, regardless of grounds given by Appeals Council for denying review, precludes district court from ordering sentence <u>six</u> remand).

18

> If [a claimant] submit[s] additional evidence that does
> not relate to the period on or before the date of the
> [ALJ's] hearing decision as required in paragraph (a)(5)
> of this section, . . . the Appeals Council will send [the
> claimant] a notice that explains why it <u>did not accept
> the additional evidence</u> and advises [the claimant] of
> [his or her] right to file a new application.

20 C.F.R. §§ 404.970(c), 416.1470(c) (emphasis added). Thus, because the Appeals Council found Plaintiff's 2023 New Evidence did not relate to the period before the ALJ, the Appeals Council <u>did not accept</u> the 2023 New Evidence, and advised Plaintiff to file a new application covering the period after the ALJ's decision (<u>see</u> Tr. 2). Under such circumstances, it would make little sense to find that the Appeals Council intended to incorporate Plaintiff's 2023 New Evidence into the record before the ALJ, particularly given the unexplained absence of that evidence from the administrative transcript before the Court.

The Court will order remand under sentence six of Section 405(g) on the basis of the New Evidence if Plaintiff can satisfy the following four requirements:

> First, [Plaintiff] must demonstrate that the [N]ew
> [E]vidence is relevant to the determination of disability
> at the time [he] first applied for benefits and is not
> merely cumulative of evidence already on the record.
> <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985)
> (citing <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 188 (4th
> Cir. 1983)). Second, [Plaintiff] must establish that the
> [New E]vidence is material, in that the Commissioner's
> decision "'might reasonably have been different' had the
> [N]ew [E]vidence been before h[im]." <u>Id.</u> (quoting <u>King
> v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)). Third,
> [Plaintiff] must show that good cause exists for h[is]
> failure to present the evidence earlier. <u>Id.</u> And
> fourth, [Plaintiff] must present to the [ C]ourt "'at

19

least a general showing of the nature' of the [N]ew [E]vidence." Id. (quoting King, 599 F.2d at 599).

Finney v. Colvin, 637 F. App'x 711, 715-16 (4th Cir. 2016). The Court will not order a sentence six remand because, as more fully explained below, Plaintiff has failed to show that the New Evidence qualifies as relevant (i.e., not cumulative) or material.

The 2023 New Evidence consists of a treatment note from Dr. Jinnah which provides, in relevant part, as follows:

> [Plaintiff] comes in today complaining of severe pain in his right knee. He has had this for a long time. H[e] was involved in an accident about 4 years ago and was treated [] with an open reduction internal fixation done by Dr. Pilson. H[is] wounds actually seem to be healed pretty well . . . . He continues to have terrible pain in his right leg and [] really finds it difficult to walk. He has been trying to apply for disability . . . .
>
> On examination is a pleasant male in no acute distress. [He] is alert[,] awake and orientated. His exam of his right knee reveals that he does have an antalgic gait. He does have an effusion in his knee. He is actually quite tender all the way around his knee but particularly at the proximal part of his tibia which is where his hardware is. Range of motion is 0 to about 100 degrees. His knee is stable to medial lateral stress and as well to AP stress. EHL and anterior tibialis are 5 out of 5.
>
> X-rays: X-rays show [Plaintiff] had open reduction and internal fixation of his right tibia. He has had screws and plates put into his tibia. The lateral tibial plateau seems to be depressed about a centimeter on these x-rays. He has significant degenerative disease that developed around this. There is no lysis around the screw holds. There is no evidence of a nonunion.
>
> Plan: I think he actually has quite severe posttraumatic arthritis of the knee. He [ha]s been having Synvisc injections but they . . . last about a week and he continues to have pain again[. H]e rates his pain [a]s being about 10 out of 10. There is no doubt in my mind

20

that he is actually very disabled by this and finds it
hard to be on his feet or toe[s] especially with the
restricted motion that he has in his knee. I am going to
put him on some Naprosyn 200 mg p.o. twice daily. I
would like to try and employ all the conservative
measures that we can prior to recommending him for a
total knee replacement. Also prior to h[is] total knee
replacement I think he is going to have to have all the
hardware removed from his lower leg and then probably
have to wait 2 to 3 months before having his knee
reconstructed.

(Docket Entry 10 at 4 (emphasis added).)

In turn, the 2024 New Evidence documents a follow-up visit to
Dr. Jinnah, which produced, in pertinent part, the following
report:

[Plaintiff] comes in today and says the Naprosyn is
helping him a little bit. I think that is a good sign.
There is some real confusion as to when his disability
really started. I would note that on March 11, 2020[,]
he suffered a terrible tibia fracture which actually
needed initially to be treated in an external fixator to
allow the skin to heal and the swelling to come down.
Eventually he did go ahead and have an open reduction and
internal fixation of this knee. Certainly to my reading
of his x-rays it would seem pretty certain that he has
been pretty much disabled from that time and [] certainly
has not been able to go back to work secondary to those
injuries. I am happy to say that really [] the
disability started in March 2020 when he first injured
this. I cannot imagine how [h]e would have been better
right away. He would have taken at least 3 to 6 months
for this to heal and even then [] he did have to have
significant therapy to try and get this to work. He has
asked me to put this in writing and I have done that
today and I hope that this can help him in terms of his
troubles with his disability. . . .

On examination is a pleasant male in no acute distress
[who] is alert[,] awake[,] and orientated. He does have
an antalgic gait. He is actually tender around his knee
and now has some significant crepitus in the knee. Range
of motion is limited to about 110 degrees of flexion.
His knee however is actually stable.

21

. . .

Plan: I think in view of the fact that the Naprosyn is helping I think we should continue to try and delay a total knee on him.  I will see him back in about 3 months to see how he is doing. . . .

(Id. at 5 (emphasis added).)  For the following reasons, the New Evidence qualifies as cumulative of evidence already in the record before the ALJ and lacks materiality and thus fails to establish a basis for remand under sentence six of Section 405(g).

With regard to the cumulative nature of the New Evidence, the record before the ALJ contained the MSS of Dr. Pilson (Tr. 365-67), who performed Plaintiff's open reduction and internal fixation (see Tr. 481-508) and treated him for approximately a year and a half after that surgery (see Tr. 509-21, 529-38, 578-83, 606-10, 623-27).  As discussed above, Dr. Pilson's MSS set forth specific functional limitations for Plaintiff arising out of his right knee injury (see Tr. 365-67), and the ALJ sufficiently explained which of those limitations he credited and which of them he rejected (see Tr. 27).  Dr. Jinnah, in contrast, first treated Plaintiff on June 3, 2022, when Dr. Jinnah gave Plaintiff a steroid injection in his right knee (see Tr. 815), and offered his disability opinions on December 20, 2023 (see Docket Entry 10 at 4), and May 14, 2024 (see id. at 5), after the relevant period in this case.  Thus, Dr. Jinnah's retroactive disability opinions qualify as merely cumulative of the more detailed (and more contemporaneous) opinions on Dr. Pilson's MSS.  Furthermore, to the extent the New Evidence

22

contains the results of x-rays and physical examinations of Plaintiff's right knee that post-dated the relevant period in this case (see Docket Entry 10 at 4-5), the record before the ALJ already contained multiple, more chronologically relevant x-rays (see Tr. 509, 516, 529, 534, 578, 816) and physical examinations (see Tr. 513, 519-20, 532-33, 537-38, 581-82, 608-09, 625-26, 815). The ALJ also expressly recognized Dr. Jinnah's statements in his treatment note dated June 3, 2022, that Plaintiff had developed posttraumatic arthritis in his right knee, as well as that he would need a total knee replacement at some point in the future. (See Tr. 25; see also Tr. 815 (Dr. Jinnah's 6/3/22 treatment note).) Accordingly, the New Evidence qualifies as merely cumulative of evidence already in the record before the ALJ.

Concerning the New Evidence's materiality, Dr. Jinnah's opinions that "[t]here is no doubt in [his] mind that [Plaintiff] is actually very disabled by [his right knee injury]" (id. at 4 (emphasis added)), that "it would seem pretty certain that [Plaintiff] has been pretty much disabled" since March 11, 2020 (id. at 5 (emphasis added)), and that Plaintiff's "disability started in March 2020 when he first injured [his right knee]" (id. (emphasis added)) all constitute statements on matters reserved to the Commissioner under the applicable regulations, see 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Those regulations deem "inherently neither valuable nor persuasive . . . [s]tatements on issues

23

reserved to the Commissioner" which "would direct [the ALJ's] determination or decision that [a claimant is] . . . disabled . . . within the meaning of the Act," 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3), such as "[s]tatements that [a claimant is] or [is] not disabled, . . . able to work, or able to perform regular or continuing work," 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Significantly, those regulations do not require an ALJ to "provide <u>any</u> analysis about how [he or she] considered such evidence in [the] determination or decision." 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (emphasis added). As the ALJ would not even labor under the obligation to analyze Dr. Jinnah's disability opinions, Plaintiff cannot demonstrate the materiality of those opinions.

In sum, because Plaintiff has not demonstrated that the New Evidence qualifies for a remand under either sentence four or six of 42 U.S.C. § 405(g), his second and final assignment of error fails as a matter of law.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

September 22, 2025